UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Emem Ufot Udoh,

Plaintiff,

v.

Vicki Janssen & Paul Schnell,

Defendants.

Case No. 21-cv-99 (WMW/LIB)

**REPORT AND RECOMMENDATION**

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636, and upon Defendants' Motion to Dismiss. [Docket No. 48]. On August 17, 2021, the Court took Defendants' Motion under advisement on the parties' written submissions. (Order [Docket No. 58]). On August 13, 2021, Plaintiff filed a motion for injunctive relief. [Docket No. 63].

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 48], be **GRANTED** and Plaintiff's Motion for Injunctive Relief, [Docket No. 63], be **DENIED**.

## I. Relevant Procedural History and Factual Background

Plaintiff Emem Ufot Udoh (hereinafter "Plaintiff") initiated the present case on January 11, 2021, by filing in this Court a "Petition for Writ of Habeus Corpus and for Mandamus under 28 U.S.C. § 1651 and 28 U.S.C. § 2241." [Docket No. 1]. On March 8, 2021, the Court construed Plaintiff's filing as a civil Complaint, but directed Plaintiff to, among other things, submit a signed copy of his Complaint by April 7, 2021. (See March 8, 2021, Order, [Docket No. 11]).

On April 2, 2021, Plaintiff filed the operative Amended Complaint[1] pursuant to 42 U.S.C. § 1983 and the Civil Rights Act of 1871 alleging that Defendants violated his constitutional right of access to the courts while he was previously detained[2] at the Minnesota Correctional Facility in Rush City, Minnesota (hereinafter "MCF"). (Compl., [Docket No. 21-1], at p. 2). Plaintiff purports to sue both Defendants in their individual and official capacities seeking compensatory and punitive damages, as well as, declaratory and injunctive relief. (Id. at p. 5).

Specifically, Plaintiff alleges that, on January 1, 2020, he sent Defendant Vicki Janssen (hereinafter "Defendant Janssen") a request to gain access to the prison law library utilizing the "Minnesota Department of Corrections Offender Kite Form." (Id. at ¶ 71, p. 18). Plaintiff sought access to the prison law library in March 2020 to "prepare," "complete," "print," "mailout," and to "file": i) a "principal brief" in his case before the Board of Immigration Appeals; ii) an "opening brief" in an appeal with the Minnesota Court of Appeal; and iii) a "petition for review" with the Minnesota Supreme Court. (Id. at ¶¶ 91, 103-105). Plaintiff alleges that, because his respective handwritten briefs had been previously rejected by the courts, he required access to the law library in order to submit his briefs in a compliant typed letter format. (Id. at ¶¶ 64-70).

However, Plaintiff alleges that "during the time within which he was required to research, prepare, complete, print, . . . mailout, and file his [respective] briefs with . . . the . . . courts, the Law Library Service to Prisoners (LLSP) was closed or shutdown due the global COVID-19 pandemic." (Compl., [Docket No. 21-1], at ¶ 90).

---

[1] For the purposes of the present motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the Complaint as true and construes them in the light most favorable to Plaintiff. See Stodghill v. Wellston Sch. Dist., 512 F.3d 472, 476 (8th Cir. 2008).

[2] A review of the docket sheet in this matter reveals that, while Plaintiff was confined to the Minnesota Correctional Facility in Rush City, Minnesota, Plaintiff is now detained at the Minnesota Correctional Facility in Faribault, Minnesota.

Specifically, between March 2020 and May 2020, Plaintiff alleges that, despite his "Kites request," Plaintiff was "forced to lockdown without any reason," and Defendant Janssen "refused to open the prison law library . . . ordering prison officials not to allow [Plaintiff] to use the prison law library." (Id. at ¶¶ 76, 83). Plaintiff alleges that Defendant Janssen placed the prison law library "in lockup or lockdown status for no legitimate penological reason . . . completely suspend[ing] movements to the . . . prison law library from [Plaintiff's] complex or unit, but allow[ing] movements from other complex or units to the . . . gym, yard, chapel, property, health, services, and visiting." (Id. at ¶ 77). Plaintiff further alleges that, when the prison law library was temporarily opened, Defendant Janssen "disabled [Plaintiff's door access and duress button . . . to restrict and to impede [Plaintiff's] movement," and failed to issue Plaintiff movement passes to the law library. (Id. at ¶¶ 78-79).

From January 2020 to August 2020, Plaintiff also alleges that he did not have access to "mailing envelopes," "writing materials, 8 1/2 -by-11 inch papers, and a typewriter" for Plaintiff to draft, "type[,] and print his briefs" because the facility's "Canteen Store" was "out-of-stock" of these materials. (Id. at ¶¶ 80, 85, 107). Plaintiff alleges that Defendant Janssen failed to provide Plaintiff with "adequate legal assistance from persons trained in [the] law, such as an [a]ttorney or a lawyer, to assist or help [Plaintiff]." (Compl., [Docket No. 21-1], at ¶ 60). Defendant Janssen also failed to provide "BOIA case laws, . . . authorities, practices, manual, and titles that describe the basic procedural rules for [Plaintiff's] principal brief before the BOIA." (Id. at ¶ 88). Plaintiff alleges that Defendant Janssen also failed to provide Plaintiff with "contact information to lawyers, attorneys, pro bono services, or to any other persons trained in the law"; did not allow Plaintiff to "contact any person trained in [the] law"; and would not allow "Attorney Bond" to visit Plaintiff—

all of which would have been helpful for Plaintiff to "make out a legally sufficient claim in his respective briefs." (Id. at ¶¶ 81, 84).

Plaintiff further alleges that, while another inmate with a typewriter could have assisted Plaintiff while he was in lockdown, Defendant Janssen's "regulation" prohibited "fellow inmates from assisting each other in or on th[eir] legal actions pending in court." (Id. at ¶ 86). Plaintiff was also restricted from requesting copies of his saved legal paperwork from Plaintiff's prior facility. (Id. at ¶ 87).

Plaintiff maintains that he was unable to use the prison law library "for months," and "by the time MCF-Rush City prison law library was open, [Plaintiff's] deadline had already passed" and his cases had been dismissed. (Compl., [Docket No. 21-1], at ¶¶ 42, 77, 82). Specifically, the Minnesota Court of Appeals dismissed Plaintiff's appeal for failing to submit his "opening brief" by March 16, 2020; the Board of Immigration Appeals dismissed Plaintiff's case for failing to file his "principal brief" by March 20, 2020; and the Minnesota Supreme Court denied Plaintiff's "motion to accept a late petition for review" for failing to file it by April 21, 2020. (Id. at ¶¶ 103-105). Plaintiff also alleges that an order from a pending case in the Juvenile Court was not handed to Plaintiff until "weeks after the due date" to file an appeal, which "precluded [Plaintiff] from pursuing his statutory right of appeal." (Id. at ¶ 39).

Plaintiff alleges that Defendant Janssen had "the administrative, exclusive[,] and final authority to "operate, supervise[,] and regulate access to the prison law library[,]" and to "allow [Plaintiff's] movements to the prison law library." (Id. at ¶¶ 48, 72). However, Defendant Janssen allegedly "reduced [Plaintiff's] law library access to a 'non-existent' level of availability for no legitimate penological reasons, and/or disciplinary reason." (Id. at ¶ 48). Plaintiff alleges that, in

April 2020, he initiated the grievance process by filing an administrative complaint in April 2020 ultimately exhausting his administrative remedies. (Compl., [Docket No. 21], at p. 11).

Plaintiff asserts that, as a result of "Defendant's [sic] actions, and Vicki Janssen acts or omissions in January 2020 through December 2020[,]" Plaintiff endured "pain, suffering, humiliation, embarrassment, mental distress, emotional distress, significant injury, physical injury, and actual injury"; and "lead to the permanent dismissal of [Plaintiff's] appeal at the Minnesota Court of Appeal on March 23, 2020, and the permanent loss of or lost opportunity for plaintiff to petition for review of the March 23, 2020 dismissal order to the Minnesota Supreme Court on April 24, 2020." (Compl., [Docket No. 21-1], at ¶ 106). Plaintiff further alleges that, "as a result of [Defendant Janssen's conduct[,]]" Plaintiff has "actually and physically suffered from [h]igh [b]lood [p]ressure and lack of sleep for the past twelve (12) months." (Id.).

Based on the allegations in his Amended Complaint, Plaintiff asserts that his "constitutional due process right of meaningful access to the courts was violated." (Id. at p. 1). Plaintiff seeks injunctive, declaratory, and monetary relief. (Id. at ¶¶ 12, 62-63, pp. 2, 6).

## II. Defendants' Motion to Dismiss. [Docket No. 48].

Defendants' Motion to Dismiss, [Docket No. 48], seeks an Order of this Court dismissing Plaintiff's Amended Complaint in its entirety.[3] Defendants argue that Plaintiff's Amended Complaint should be dismissed because it fails to meet the pleading standards of Rule 8 of the Federal Rules of Civil Procedure and fails to state claim upon which relief may be granted.

[3] While the undersigned is aware that the present Motion to Dismiss was brought by the named Defendants only in their individual capacity, Plaintiff is proceeding in forma pauperis, and therefore, the undersigned will review Plaintiff's Amended Complaint as it relates to the Defendants in their individual and official capacity. See 28 U.S.C. § 1915(e)(2). When a plaintiff is proceeding in forma pauperis under § 1915 "the court shall dismiss the case at any time if the court determines that the action . . . is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." It is, therefore, this Court's obligation to review Plaintiff's Amended Complaint as asserted against Defendants in their official and individual capacity.

Defendants further argue that Plaintiff fails to allege that Defendants were sufficiently involved in any alleged constitutional violation. In the alternative, Defendants argue that even if Plaintiff's Amended Complaint could be construed as stating a cognizable, federal claim, Defendants are entitled to qualified immunity.

**A. Standard of Review**

Pro se complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). While the Court is required to construe the content within Plaintiff's pleadings liberally as he is proceeding pro se, Plaintiff is nevertheless bound by applicable procedural and substantive law. Id.; Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs, 745 F.2d at 528.

Title 42 U.S.C. § 1983 establishes a cause of action against any "person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state" causes the deprivation of a federal or Constitutional right. 42 U.S.C. § 1983.

**1. Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "A court must dismiss an action over which it lacks subject matter jurisdiction." Pomerenke v. Bird, No. 12-cv-1757 (DSD/JJG), 2014 WL 30363, at *1 (D. Minn. Jan. 3, 2014) (citing Fed. R. Civ. P. 12(h)(3)). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a pleading for lack of subject matter jurisdiction. Such a motion may challenge, at any time, the sufficiency of the pleading on its face or may challenge the factual truthfulness of its allegations. See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993);

Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). To invoke federal question jurisdiction, a plaintiff must plead facts supporting a cause of action arising under federal law or the United States Constitution. 28 U.S.C. § 1331. A complaint states a federal cause of action when it appears on the face of a well-pleaded complaint. See generally Oglala Sioux Tribe v. C&W Enterp., Inc., 487 F.3d 1129, 1131 (8th Cir. 2007) (citation omitted).

"A court does not obtain subject-matter jurisdiction just because a plaintiff" purports to raise "a federal question in his or her complaint. If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." Biscanin v. Merrill Lynch & Co., Inc., 407 F.3d 905, 907 (8th Cir. 2005) (citations omitted) (citing Hagans v. Lavin, 415 U.S. 528, 537–38 (1974)). In other words, merely because a plaintiff states in the complaint that the Court has subject matter jurisdiction does not make it so. See Id. It is the burden of the party asserting jurisdiction to prove that jurisdiction exists. VS Ltd. P'ship. v. Department of Hous. & Urban Dev., 235 F.3d 1109, 112 (8th Cir. 2000).

**2. Failure to State a Claim**

When evaluating a motion to dismiss under Rule 12(b)(6), courts "look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis Cty. of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir 1998)), cert. denied 525 U.S. 1178 (1999). Courts must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Aten v. Scottsdale Ins. Co., 511 F. 3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level" which "requires more than labels and conclusions, and

a formulistic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57). When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard mere legal conclusions that are couched as factual allegations. See Iqbal, 556 U.S. at 678–81.

Generally, in evaluating a complaint under Rule 12(b)(6), materials outside the pleadings cannot be considered on a motion to dismiss. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, a court "may consider the pleadings themselves, material embraced by the pleadings, exhibits attached to the pleadings, and matters of public record" such as judicial records. Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079).

**B. Plaintiff's § 1983 Claims**

Plaintiff purports to raise claims against Defendants pursuant to 42 U.S.C. § 1983. To state a claim pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of Saint Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)).

A plaintiff must plead facts sufficient to demonstrate that each individual defendant was directly and personally involved in an alleged constitutional violation. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").

In addition to pleading individual involvement, a plaintiff must sufficiently plead a violation of a specific constitutional right. Section 1983 does not itself grant jurisdiction. Hagens v. Lavine, 415 U.S. 528, 534 (1974).

### 1. Plaintiff's § 1983 Official Capacity Claims Seeking Monetary Damages[4]

As a threshold jurisdictional consideration, the Eleventh Amendment prohibits an action for monetary damages against a state unless it has unequivocally consented to suit or Congress has abrogated the states' immunity for a particular federal cause of action. Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996); Faibish v. University of Minnesota, 304 F.3d 797, 200 (8th Cir. 2002). States are entitled to Eleventh Amendment immunity from federal claims brought under Section 1983. Hadley, 76 F.3d at 1438 ("Section 1983 does not override Eleventh Amendment immunity.").

The immunity afforded a state in federal court extends to agencies of the state. Minnesota Pharmacists Ass'n v. Pawlenty, 690 F. Supp. 2d 809, 815 (D. Minn. 2010) (citing Florida Dep't

[4] In the "Parties" section to his Amended Complaint, Plaintiff asserts that he seeks "damages" against Defendants "in [their] individual capacity" and "declaratory and injunctive relief in [their] official capacity"; however, in his "Prayer for Relief" section, Plaintiff ostensibly appears to seek monetary damages from Defendants in both their official and individual capacities. (See Compl., [Docket No. 21], at pp. 2, 6). Therefore, the Court, in an abundance of caution, will construe Plaintiff's Amended Complaint as asserting claims seeking monetary damages against Defendants in their official capacities.

of Health & Rehabilitative Sers. v. Florida Nursing Home Ass'n, 450 U.S. 147 (1982)). Similarly, a suit against a state employee in that person's official capacity constitutes a suit against the public employer, namely, the state itself. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999); Kentucky v. Graham, 473 U.S. 159, 165 (1985); Uland v. City of Winsted, 570 F. Supp. 2d 1114, 1119–20 (D. Minn. 2008); Baker v. Chisom, 501 F.3d 920, 924 (8th Cir. 2007); Bankhead v. Knickrehm, 360 F.3d 839, 844 (8th Cir. 2004). "The law is clear that, 'the real party in interest in an official capacity suit is the governmental entity and not the named official.'" Semler v. Ludeman, No. 9-cv-732 (ADM/SRN), 2010 WL 145275, at *6 (D. Minn. Jan 8, 2010) (citing Baker, 501 F.3d at 925); see Hafer v. Melo, 502 U.S. 21, 25 (1999). "It is well-settled that in a 42 U.S.C. § 1983 action, the Eleventh Amendment precludes an award of money damages against a state official acting in his or her official capacity. A plaintiff may maintain an action against a governmental official if the complaint seeks only injunctive or prospective relief." Semler, 2010 WL 145275, at *7 (citations omitted).

Defendant Janssen, named in her official capacity as warden of MCF-Rush City, is a state official. Latimer v. Smith, No. CV 16-3601 (MJD/DTS), 2018 WL 3979601, at *7 (D. Minn. July 20, 2018), report and recommendation adopted, No. CV 16-3601 (MJD/DTS), 2018 WL 3978112 (D. Minn. Aug. 20, 2018) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Defendant Paul Schnell, who is named in his official capacity as Commissioner of the Minnesota Department of Corrections, is also a state official. Id. The Court, therefore, necessarily construes Plaintiff's alleged Section 1983 official capacity claims against the Defendants as being alleged against the employing entity, i.e., the State of Minnesota. As relief, Plaintiff seeks, among other things, monetary damages.

Liberally construing Plaintiff's Amended Complaint and drawing all reasonable inferences in his favor, the record now before the Court is still devoid of any evidence or authority demonstrating either the state's consent to suit or Congressional abrogation of the state's sovereign immunity.

Therefore, the Court recommends that Plaintiff's § 1983 claims seeking monetary damages as alleged against the Defendants sued in their official capacities be **DISMISSED with prejudice** for lack of subject matter jurisdiction. See Semler, 2010 WL 145275, at *7 ("[T]o the extent that Plaintiffs seeks monetary damages for actions taken by Defendants in their official capacities, these claims against Defendants are barred by the Eleventh Amendment[.]").

Recommending the dismissal of Plaintiff's § 1983 claims for monetary damages against the Defendants in their official capacities leaves Plaintiff's § 1983 official capacity claims for injunctive and declaratory relief; and his § 1983 individual capacity claims for monetary damages, injunctive relief, and declaratory relief.

**2. Personal Involvement**

Plaintiff's § 1983 claim alleges that "Defendants denied [Plaintiff] the use of the prison law library during lockdown periods without providing alternative means of legal research assistance [and legal typing]"; and Defendant Janssen, who "operate[d], supervise[d,] and regulate[d] access to the prison law library" and had the "administrative, exclusive[,] and final authority to allow [Plaintiff's] movements" would not allow Plaintiff to use of the prison law library. (Compl., [Docket No. 21-1], at ¶¶ 40, 48).

"To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014). Thus, to survive Defendants' current Motion to Dismiss, Plaintiff must have alleged

sufficient facts to show each individually named Defendants' personal involvement in the asserted violations with "more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." See Twombly, 550 U.S. at 555.

Here, Plaintiff fails to allege any specific factual allegation against Defendant Schnell in the Amended Complaint. Indeed, Defendant Schnell is not named in the caption of the Amended Complaint but is only identified under the "Parties" heading. Further, other than being referenced by incorporation generally when Plaintiff refers to all named Defendants collectively, the only factual allegation in the Amended Complaint against Defendant Schnell is that he was "not acting under the direction and control of DOC in closing the MCF-Rush City prison law library." (Compl., [Docket No. 21-1], at ¶ 13). This is a complete failure of the showing needed in the Amended Complaint to allow Plaintiff's claim against Defendant Schnell to proceed because it is entirely devoid of any factual allegation to show any personal involvement. See Twombly, 550 U.S. at 555.

Plaintiff's mere generic reference throughout his Amended Complaint that "Defendants" collectively "denied [Plaintiff] the use of the prison law library during lockdown periods without providing alternative means of legal research assistance and legal typing" violating Plaintiff's protected due process rights of meaningful access to the courts are generalized, conclusory statements which fail to raise Plaintiff's claim of Defendant Schnell's personal involvement in any way whatsoever above the purely speculative level. These are precisely the type of conclusory legal conclusions couched as facts which this Court is not bound to accept. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Boots v. Johnson, 17-cv-3923 (DWF/LIB), 2018 WL 4443166, at *6 (D. Minn. Jan. 23, 2018), report and recommendation adopted, 2018 WL 3659018 (D. Minn. Aug. 2, 2018).

Plaintiff fails to state any fact of any kind as to how Defendant Schnell was personally involved in or directly participated in the alleged constitutional violations he seeks to set forth in his Amended Complaint. (See Compl. [Docket No. 21-1]).

Therefore, the Court recommends that Plaintiff's § 1983 claims against Defendant Schnell, in his official and individual capacity, be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

Additional reasons also support the dismissal of the claims as alleged against Defendants.

### 3. Plaintiff's Access to Court Claim

An analysis of Plaintiff's § 1983 claims requires an examination of the specific purported constitutional right Plaintiff alleges Defendants violated. In the present case, the sole basis alleged for Plaintiff's § 1983 claim is that, during lockdown periods from March 2020 to December 2020, Defendants limited Plaintiff from using the prison law library and failed to provide him with alternative legal research and stationery thereby resulting in dismissal of his cases before the Board of Immigration Appeals, the Minnesota Court of Appeal, and Minnesota Supreme Court. (See Compl. [Docket No. 21-1]).

An inmate's constitutional right of access to the courts includes access to "adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). However, this is not "an abstract, freestanding right to a law library or legal assistance." Lewis v. Casey, 518 U.S. 343, 351 (1996). Prison authorities are not obligated to provide inmates with every possible means of legal assistance for every conceivable civil claim an inmate seeks to advance. Kelsey v. Minnesota, 622 F.2d 956, 958 & n.2 (8th Cir. 1980).

For a prisoner to successfully plead such a claim, he must establish that the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of

confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim. White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007) (citing Christopher v. Harbury, 536 U.S. 403, 413, 415 (2002); Lewis, 518 U.S. at 351, 353, 355). Where a prisoner fails to show actual injury, he or she lacks standing to bring a right of access claim, and a federal court thus lacks jurisdiction over the claim. See White, 494 F.3d at 680 (citing Lewis, 518 U.S. at 349); Holleran v. Baker, 109 F. App'x 830, 831 (8th Cir. 2004) (affirming dismissal of access to court claims where plaintiff "failed to allege an actual injury, i.e., that a 'nonfrivolous legal claim had been frustrated or was being impeded'") (quoting Lewis, 518 U.S. at 351-53) (per curiam).

Here, Plaintiff merely identifies appeals that were raised in the Minnesota Court of Appeal and the Minnesota Supreme Court, and conclusory asserts that his respective cases were "non-frivolous" and "actionable." Furthermore, Plaintiff fails to provide any details about the claims or underlying arguments that he would have advanced in his "opening brief" and "petition for review" with these respective courts.

The United States Supreme Court, however, has explained that in the context of alleging the underlying claim that Plaintiff was prevented from pursuing, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued[.]" Harbury, 536 U.S. at 417-18. Because Plaintiff fails to altogether provide information about the basis for his purported post-conviction appeals before the Minnesota Court of Appeals and Minnesota Supreme Court, he falls short of alleging the underlying claim as an element of his access to courts claim. See Harbury, 536 U.S. at 415-416 (providing that "the predicate claim be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope.").

To the extent Plaintiff seeks to advance an access to court claim based on his inability to file a "principal brief" in his case before the Board of Immigration of Appeals or to generally file an appeal in his case in Juvenile Court, these cases do not appear to relate to Plaintiff's sentence or conditions of confinement, see White, 494 F.3d at 680, but, rather, relate to his immigration status and family custody issues.[5] Accordingly, this represents a sufficient, individual basis to recommend dismissal.

In summary, Plaintiff's general allegations are insufficient to state a claim that he was denied meaningful access to the courts in connection with a challenge to his sentence or a condition of confinement. The Court concludes that Plaintiff's alleged federal constitutional claim of a violation of his First Amendment right in support of his 42 U.S.C. § 1983 claim has no basis in fact as plead by Plaintiff in his Amended Complaint. Therefore, Plaintiff's claim of a constitutional violation fails to give rise to federal question jurisdiction under § 1983.[6] Thus, this Court lacks the requisite subject matter jurisdiction to adjudicate Plaintiff's § 1983 claim.

The Court recommends that Plaintiff's § 1983 official capacity claims for injunctive and declaratory relief as alleged against all Defendants, as well as, his § 1983 individual capacity claims for monetary damages, injunctive relief, and declaratory relief as alleged against all Defendants be **DISMISSED without prejudice** for lack of subject matter jurisdiction.

[5] To the extent Plaintiff advances an access to the courts claim on the basis that his ability to appeal an order from the Juvenile Court was impaired because he did not receive said order from "Defendants" until "weeks after the due date," this allegation with nothing more is insufficient to establish a constitutional violation. See Turner v. Ms. Douglas, No. 1:06CV00058, 2007 WL 87628, at *2 (E.D. Ark. Jan. 10, 2007) (citing Lewis, 518 U.S. 343, 349 (1996)) ("To state a valid § 1983 claim due to interference with an inmate's legal mail, an inmate must allege that a defendant's deliberate and malicious interference actually impeded [his] access to the court or prejudiced an existing action.").

[6] The Court notes that based on the content of the Amended Complaint, there is no basis upon which this Court could alternatively exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

**4. Plaintiff's Motion for Injunctive Relief. [Docket No. 63].[7]**

Liberally construing his Motion for Injunctive Relief, [Docket No. 63], Plaintiff seeks an Order of this Court directing "Defendants" to reopen the law library, or in other words, an Order enjoining Defendant from maintaining the "ongoing closure of the prison law library." (Plf.'s Mot. [Docket No. 63], at ¶ 6). Plaintiff generally alleges that the library closure "remains a threat of serious injury to Plaintiff's existing litigations" if Defendants' conduct is not enjoined. (Id.).

When considering a motion for a temporary restraining order or preliminary injunction, the Court considers four factors: (1) the probability that the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance of harms as between the parties; and (4) the public interest. S.J.W. ex rel Wilson v. Lee's Summit R7 Sch. Dist., 696 F.3d 771, 776 (8th Cir. 2012) (citing Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981)); Tom T., Inc. v. City of Eveleth, No. 3-cv-1197 (MJD/RLE), 2003 WL 1610779, at *3 (D. Minn. Mar. 11, 2003); see Watts v. Fed. Home Loan Mortgage Corp., No. 12-cv-692 (SRN/JSM), 2012 WL 1901304, at *3 n.3 (D. Minn. May 25 2012) ("Courts in the Eighth Circuit apply the same standards to a request for a preliminary injunction and temporary restraining order.") (citing S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project, 877 F.2d 707, 708 (8th Cir. 1989); Jackson v. Nat'l Football League, 802 F. Supp. 266, 229 (D. Minn. 1992)); Callerons v. FSI Int'l, Inc., No. 12-cv-2120, 2012 WL 4097832, at *2 (D. Minn. Sept. 18, 2012) (explaining that these factors apply to both preliminary injunctions and temporary restraining orders). "At base, the question is whether the balance of equities so favors the movant that justice requires the court

[7] To the extent Plaintiff seeks an order directing Defendant Janssen to transfer Plaintiff to a medium or minimum custody facility because "the conditions of confinement of Minnesota Correctional Facility-Rush City, which is a close custody, are harsher with unwarranted lockdown with no movement or pass to the MCF-Rush City Prison law library," the Court recommends this be denied as moot because Plaintiff is no longer in detained at MCF-Rush City. (Compl. [Docket No. 21-1], at ¶¶ 2, 47, 62).

to intervene to preserve the status quo until the merits are determined." Dataphase, 640 F.2d at 113.

Injunctive relief is extraordinary relief, and the burden of establishing the propriety of an injunction is on the movant. Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003); see, Roudachevski v. All-American Care Centers, Inc., 648 F.3d 701, 705 (8th Cir. 2011). A temporary restraining order or preliminary injunction cannot issue if the movant fails to demonstrate a likelihood of success on the merits. See, Beeks v. CitiMortgage, Inc., No. 14-cv-4603 (MJD/HB), 2014 WL 5704205, at *5 (D. Minn. Nov. 5, 2014); Wickner v. Larson, No. 9-cv-940 (DWF/JJK), 2010 WL 98940, at *3 (D. Minn. Jan. 11, 2010); Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005).

On the first factor of whether or not to issue a temporary restraining order, i.e., probability of success on the merits, the Court in Dataphase, "rejected the notion that the party seeking relief must show 'a greater than fifty percent likelihood that he will prevail on the merits,' holding instead that "where the balance of other factors tips decidedly toward plaintiff a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." Planned Parenthood Minn. N.D., S.D. v. Rounds, 530 F.3d 724, 731 (8th Cir. 2008) (citing Dataphase, 640 F.2d at 113). Thus, the Eighth Circuit has instructed District Courts considering this factor to query whether the moving party has a "fair chance of prevailing." Id. at 732.

In the present case, Plaintiff fails to demonstrate that he has a "fair chance of prevailing" on his access to court claim. For the reasons discussed above, the Court has already concluded that Plaintiff fails to sufficiently allege his access to court claim raised in his Amended Complaint, and therefore, the Court lacks the requisite subject matter jurisdiction necessary to adjudicate

Plaintiff's claims. The Court will not repeat that analysis here. It is sufficient to state that the undersigned's recommendation that Defendants' Motion to Dismiss, [Docket No. 48], be granted and this matter be dismissed is sufficient to demonstrate that Plaintiff has failed to demonstrate he has a fair chance of prevailing on his claim.

Therefore, the undersigned recommends that Plaintiff's Motion for Injunctive Relief, [Docket No. 63], be **DENIED**.

## III. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss, [Docket No. 48], be **GRANTED**, as set forth herein;
2. Plaintiff's § 1983 claims seeking monetary damages as alleged against the Defendants sued in their official capacities be **DISMISSED with prejudice** for lack of subject matter jurisdiction;
3. Plaintiff's § 1983 official capacity claims for injunctive and declaratory relief as alleged against all Defendants be **DISMISSED without prejudice** for lack of subject matter jurisdiction;
4. Plaintiff's § 1983 individual capacity claims for monetary damages, injunctive relief, and declaratory relief as alleged against all Defendants be **DISMISSED without prejudice** for lack of subject matter jurisdiction; and
5. Plaintiff's Motion for Injunctive Relief, [Docket No. 63], be **DENIED with prejudice**, as set forth herein.

Dated: October 15, 2021

s/Leo I. Brisbois
Hon. Leo I. Brisbois
U.S. MAGISTRATE JUDGE

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).